and we'll hear from Ms. Gassman. Good morning. May it please the Court. Kayla Gassman for Mr. Sanchez. The issue before the Court is a plain sentencing guidelines calculation error. The District Court erred by assessing an extra crime of violence criminal history point when in fact neither of Mr. Sanchez's prior convictions for Texas indecency with a child or Texas sexual assault of a child actually qualify as a crime of violence under the relevant guideline definition. There was no objection to the extra point in the District Court, but the government on appeal agrees that an error did occur. So I will just briefly describe the error and then move on to the remaining prongs of plain error review. First, the PSR did correctly assess three points for Mr. Sanchez's combined two-year concurrent sentences for his 2011 Texas convictions for indecency and sexual assault of a child, which arose from the same incident. But the PSR then assessed an extra criminal history point for an uncounted crime of violence. But Mr. Sanchez should receive that point only if both of the prior convictions qualify as a crime of violence under the definition in guideline 4B1.2. But in fact, neither offense qualifies under that definition. They don't qualify under the first part of that definition, which is a use of force prong because this court's case law states that they do not. The Laskez-O'Vera and US v. Houston hold respectively that Texas indecency with a child and Texas sexual assault of a child, which is a statutory rape offense, do not have the use of force as an element. The offenses also don't qualify under any of the enumerated offenses in the 4B1.2 definition. The only one that could possibly apply is forcible sex offense. But the commentary to 4B1.2 specifies that sex offenses based on age, such as sexual abuse of a minor and statutory rape, qualify only if they are categorically equivalent to 18 U.S.C. section 2241C, which requires either a victim under the age of 12 or a victim under the age of 16, plus a four-year age differential, plus the use of force, threats, or incapacitation. Let me ask you, why didn't the fact that he forced her to do oral sex, a 14-year-old, and he was 22 at the time, why doesn't that qualify under that statute? So that the crime of violence... This is not a crime of violence, by the way. The crime of violence inquiry is a categorical approach, and the Texas statute, neither Texas indecency nor Texas statutory rape have any element of lack of consent. The only elements of those crimes are sexual conduct with a person under the age of 17. So lack of consent is not an element, and factual consent is not even a defense. So that's why under the facts of the offense, you don't qualify. And the error of classifying both of those... It's pretty hard to make that argument with a straight face, and it's pretty hard for us to have to enforce a law that is linguistically absurd. But anyway, we... The court certainly has grappled with the categorical approach before, but it is the law. I would also point the court toward the Tenth Circuit case whose name I'm going to butcher, I'm sure. Geiswein cited in my brief where there was a very similar offense, and the Tenth Circuit applied the categorical approach and said there's no element of force, and so it does not qualify. And the error is clear and obvious in light of Velasquez-Olvera, Houston, and the plain text of the guidelines definition, which does call for a categorical approach. Well, let me ask you a question. The public defender represented this fellow at sentencing, and as I understand it, the district court asked if everything else in the PSR was correct, and Sanchez-Hernandez, his counsel, said yes. That is why we're here on plain error review, because that was at least a forfeiture of the error, of an error that went unnoticed by both counsel and the court. So because there was no objection, we're here on plain error review, and we do have to meet those fronts. Is that a forfeiture or an actual express waiver? I believe an express waiver would require some indication that a knowing waiver of an error, and there's nothing in the record that indicated counsel was aware of an argument that he chose to forfeit, or he chose to waive. Everything indicates that it was simply a mistake. It was an error that was overlooked by both counsel, the prosecutor, and the court. So that would be a forfeiture, and we would be on plain error review. Was there no colloquy about awareness of what was in the PSR? There was a colloquy about the facts in the PSR, but there was no discussion of whether the legal definition of the crime of violence definition and whether counsel was aware that there could be an argument that these offenses did not qualify and chose to forego that objection. You know, you're no stranger to this court, and you've argued before me before, but I have remonstrated with this public defender's office on more than one occasion about sandbagging district courts. And there is nothing in this colloquy or in this counterintuitive but direct representation about crime of violence that the public defender's office did not or should not have known at the time of this guy's sentencing. So I think there's two parts to that statement. So as for the sandbagging, I would point the court towards Rosales-Morales. That certainly is something we have heard from the court before. It is every time the court expresses a concern, we take that to heart. We listen to that. But as for sandbagging, I think there's just no realistic probability that that's what happened in this case. The Supreme Court said in Rosales-Morales the remote possibility, if there's any possibility at all that any lawyer would see any possible benefit to foregoing an objection. Well, I didn't say it was deliberate. I would say that the public defenders are supposed to be the experts, which is the whole basis on which we have many public defenders, well-financed, well-paid, and so on. And for them to come. Now, perhaps it's not going to happen anymore on crime of violence because the whole scheme of that has been rejiggered. But, you know, for the public defender to come up to us and say, oops, we made a mistake at sentencing. Now, it's absurd. And I've chastised the government when they've done the same thing. But, of course, public defender stands to gain more from plain error. So I certainly hear that concern. My office has heard that concern. We certainly strive to be the experts. But all I can say is that mistakes are made. Sometimes things do get missed. Of course, we strive to not have that happen. But sometimes it does. And, of course, we are obligated to raise those on appeal for our clients when we see that they have occurred. Okay. Well, let me move on to what appears to be a very difficult part of your case. And that is that you, that the judge made it pretty darn plain that he wanted to sentence this fellow more than 41 months because he had sentenced him to 41 months only a couple years earlier. And he had not only served his time, been deported, but he had immediately come back into the U.S. and got caught again. So what the court did was impose an upward departure, a guidelines-based upward departure for underrepresentation of criminal history because of that previous illegal reentry and 41-month sentence. But the reason why the error still affected substantial rights in this case is because the error caused the court to begin that departure from the wrong point. So starting from Category 4, the court went up to Category 5, a one-level, a one-category upward departure. Yes, but doesn't the record make it pretty darn plain that even if the judge had accepted your characterization of the appropriate sentencing range, he would have been where he is today? I don't think the record does make that clear because the court's selection of Category 5 was infected by the error in this case. So the court never actually considered the correct guidelines range or the correct… So you think he might have sentenced the fellow to 42 months instead of 41? I do, Judge Jones, and I think that there are… So we're here on a four-month differential. Yes, and the Supreme Court in Rosales-Morales did… Can we quote you that to Judge Crane if we have to re-sentence? Absolutely. All right. The Supreme Court said that any amount of jail time is significant to the person, and I certainly wholeheartedly support that position. And there are several sentences above the 41 months that the judge was concerned with and the 48 months that Mr. Sanchez actually received that would still account for Judge Crane's concern with the prior sentence. And I would also point the court towards Rodriguez-Pena, the pending case that I submitted in a 28-J letter, which I think illustrates the possibility of prejudice in that case, where Judge Crane actually sentenced a defendant in very similar circumstances to Mr. Sanchez, including the same prior 41-month sentence, a quick return to the United States, and a prior conviction for indecency with a child. And beginning from Category 3, Judge Crane did depart upward only one category to Category 4 in a 37- to 46-month range and sentenced that defendant to 44 months. I think that reinforces the possibility, the reasonable probability of prejudice in this case had Judge Crane begun the departure from the correct beginning point of Category 3 as opposed to Category 4. And after Melina Martinez, the reliance on an incorrect guidelines range is enough to show a reasonable probability of prejudice, unless there's evidence that the judge was not being guided by the guidelines range. Well, here I would chastise the government, whose brief forgot to cite Rosales-Morales. And I realize that that is now a very stringent test. Can you hypothesize for us any circumstances where any error first raised on appeal would not be reversible, plain error following Rosales-Morales? On the fourth prong, I don't think we've seen one actual case yet, but I could hypothesize perhaps there is a plain error, but maybe there's a second plain error that's discovered on appeal that was in the defendant's favor. So perhaps one error cancels out the first error. That could be one circumstance that I have thought of, but here I think what is clear is that we don't have anything here other than the government has raised things like recidivism or the facts of Mr. Sanchez's prior sex offense. And after Rosales-Morales, and as multiple cases from this court have now recognized, things relevant to criminal history or the ultimate reason for the sentence are no longer relevant considerations under the fourth prong. And this is an ordinary case, precisely like the one in Rosales-Morales, where there is a plain sentencing guidelines calculation error that affected the defendant's substantial rights. And where that is the case, this court should correct the error under the fourth prong of plain error review. So unless there are further questions, I have reserved time for rebuttal. Yes, ma'am. Thank you. Mr. Berry? Good morning. May it please the court, good morning. Richard Berry from the United States, opposing counsel. I accept Judge Jones' chastisement for omitting Rosales-Morales from my discussion of the fourth prong and apologize both to the court and to opposing counsel. Now, if I could reverse the flow just a bit to Judge Jones' statement about the error in this case. The error in this case, erroneously adding an extra criminal history point, which increased Sanchez-Hernandez from a 30 to 37 advisory guideline range based on a criminal history category 3 and a total offense level 17, was completely obliterated when Judge Crane took 41, 42, and all the other numbers off the table at page 92 and 93 of the sentencing transcript. Judge Crane provided four separate specific reasons for departing upward from criminal history category 4, the erroneous criminal history category, to criminal history category 5. As Judge Jones said, Judge Crane immediately recognized Sanchez-Hernandez had been in front of him in May 2014. He'd been sentenced to 41 months. He was deported after approximately, he was released after approximately 36 months and deported back to Mexico and returned in less than six months. Judge Crane said clearly, as many judges along the border have said clearly, something more than 41 months is required to address your recidivist behavior. The PSR suggested under 2L1.2, application note 5, an upward departure on the basis of the under-punishment for the state court offenses. But Judge Crane focused on, first, on the recidivist behavior because he had sentenced this defendant less than four years earlier and now the defendant was back less than six months after he'd been released from BOP. Specifically, Judge Crane said, after addressing several arguments that I'll pick up in just a moment, Judge Crane said the court adopts the factual findings in the guideline calculations in the PSR, which leaves you with a total offense level of 17, a criminal history category of 4, and an advisory guideline range of 37 to 46. However, the court finds category 4, 37 to 46 months, substantially under-represents the likelihood of recidivism, given that you got 41 months and you returned, you served it and returned in less than six months and now you're standing in front of me again. I find criminal history category 5, which in this case is 46 to 57 months, adequately addresses the likelihood of recidivist behavior. He immediately added, I've considered the sentencing factors under 18 U.S.C., 3553A, and I find that category 5, 46 to 57 months, addresses all of those factors. So in response to Judge Jones' comment, we're here over two months, 46 or 47, which are the only two sentences that would be less than the 48 months that was actually imposed. By referring to the previous sentence, I respectfully submit that the 46 month was also not on the table, for the simple reason that during the sentencing hearing, Judge Crane said, when you were here last in May of 2014, I sentenced you to 41 months, which at that time was the lowest end of the correctly calculated advisory guideline range. Clearly that wasn't enough. Clearly the lowest end of the advisory range doesn't get it. It stands to reason that Judge Crane would be unlikely to impose a sentence at the lowest end of the increased 46 to 57 month range. So I would respectfully submit that the only other option would be 47 months. We're here discussing the remote mathematical possibility that Randy Crane might conceivably have imposed 47 and 48. Can we go back to whether plain error review applies at all? I take it that the government has conceded prong one of the plain error review standard. After Esquivel-Quintana and after this Court's holding cited in the opening part of the brief, yes, sir, Your Honor, we concede an error that is clear or obvious as of the time of the appeal. So I understand prong two, but I want to go back to prong one, which is, is the government's position that when the defendant and his counsel reviews the PSR, all of the stuff in the PSR, the guidelines ranges, all of the mathematical recommendations from the probation's office, etc., and then engages in a colloquy where there is one correction made to what's in the PSR, so they clearly thought about it, read it, talked about it, and then make an intelligent waiver on the record, that that is the same as a forfeiture that is not noticing a problem? Your Honor, the direct answer would be, not that I would give an indirect answer, the direct answer would be that our office has argued on numerous occasions, district judges routinely ask, is everything in the PSR correct? They don't go paragraph by paragraph, but they routinely ask, is everything in the PSR correct? And the response is invariably, yes, except for an alias name or a date of birth or something along those lines, as was the case here. Our office has argued, I personally have argued, that that constitutes a waiver of the error, and to the best of my knowledge, we have never succeeded on that, other than the opinion in Chavez-Hernandez, where there was nothing about the female victim's age in the PSR, but at the sentencing hearing there was a discussion that the young woman was 14, and the court concluded that the defendant was bound by his failure to correct the representation. Which we called an evidentiary admission. And you agree that Rule 52 wouldn't apply if, for example, the colloquy was paragraph by paragraph, and we just said, do you agree that this is right? Yes, sir, you are. I would certainly agree that it wouldn't apply, it shouldn't apply. I mean, obviously I agree that there is an argument to be made that waiver applies, even when it's a simple, generic, broad-based question. Have you read the PSR? Yes, I have. Is everything in the PSR correct? Yes, it is. Well, is it fair to say that this is a broad-based waiver? I mean, they go through it, and there are corrections made. For example, where was I arrested? Was it in Roma or somewhere else? I mean, so it's not as if they, you know, it's not intelligent. They clearly read through the PSR. They agreed that the PSR was accurate with an exception, which was corrected. So it seems like a waiver, not a forfeiture of whatever error may have existed. Is that wrong? That is not wrong, and I certainly apologize to the court for not raising that issue. That would be my incompetence, for which I am alone and responsible. Although, as I say, our office has raised that issue before and not been successful. And at some point, you simply proceed to plain error. Well, there's nothing in the other—I mean, plain error has been resorted to, you know, probably a thousand times in the course of our sentencing appeals. And I mean, not only raised by the public defender, but by other defendants' counsel. Is there any authority anywhere in the United States that the fact that they discover an error after sentencing prevents the characterization as plain error? I mean, where do you draw the line between outright waiver and, you know, forgetfulness, supposedly? That is an excellent question, to which I simply do not have a lucid answer at this moment. In this instance, to fill in my answer to your question, Judge Oldham, I conceded the first two prongs because I respectfully submit we went on either the third prong or the fourth prong, particularly the third prong, where, as I was saying, Judge Crane said, criminal history category four, not 41 months, criminal history category four, 37 to 46 months, is wholly insufficient to address your recidivist behavior. Do you agree that under Rosales-Mireles you'd have a problem on prong four at this point? No, Your Honor, I respectfully do not agree. Proceeding to the fourth prong argument, the court's determination that all of criminal history category three was not sufficient takes this out of Rosales-Mireles. Molina-Martinez and Rosales-Mireles are both essentially the same case. They were both 1326B illegal reentries. They were both total offense level 21. They were both criminal history category five. They were both erroneously placed in criminal history category six as the result of guidelines calculation errors by the probation office. In Molina-Martinez, the Supreme Court said when the sentence imposed, in this case 77 months by Judge Hainan, falls within the correct range, 70 to 87, and the incorrect range, 77 to 96, you cannot require, quote, more to grant relief. In Rosales-Mireles, the Supreme Court said you cannot go above and beyond the shocks, the conscience of the common man standard. You're left with the impugns, the fairness and integrity of judicial proceedings. Well, I'd like to think that were the case, but didn't the court in Rosales-Mireles also say that recidivism isn't a grounds or something? Yes, Your Honor. Naked recidivism is not the grounds, but in this case it's a specific focus on your, Sanchez Hernandez, prior felony conviction for illegal reentry in front of me, the Honorable Randy Crane. Three other reasons came to the fore during the discussion at the sentencing hearing. Second, both trial defense counsel minimized his state court convictions, claiming that they were not assaulted behavior. Neither the sexual, the indecency of the child or the sexual assault of a child was an assaulted behavior. And there's a discussion between the two attorneys and Judge Crane to the fact that he pled guilty to the indecency of the child and went to trial on sexual assault of a child and was convicted by a jury. The prosecutor argued effectively, I think, that grabbing the 14-year, for a 22-year-old man to grab a 14-year-old girl's hands and place them on his sex organ is assaulted conduct. To place his penis in her mouth is also assaulted conduct, and therefore, by minimizing his prior conviction, he undercuts the seriousness of that offense. Also, the third factor, Judge Crane said, I see that because of your two prior Texas convictions in 2011, for indecency with a child and sexual assault of a child, you should have registered under the Sex Offender Registration and Notification Act. SORNA, this is in page 92 and 93 of that record. You haven't registered. I'm just wondering, why is that? And then Judge Crane asked the prosecutor, why was this not indicted as a separate count? The prosecutor responded that the case had not been presented to our office. Judge Crane then said, we see a lot of this along the border. People re-enter, they've committed a 1326b2 violation, which invariably carries a higher, almost invariably carries a higher sentence. They have also committed a prior state sex offense, usually in Texas, which requires SORNA registration. And yet, they're not registered, and your office doesn't pursue the SORNA charge. And the prosecutor said that they've not been referred to us by an agency for prosecution. The final reason for Judge Crane's separate departure, the final reason that takes this out of Rosales-Morales is, Sanchez-Hernandez was talking to Judge Crane, and he said, I returned almost immediately. Judge Crane said, you were here less than four years ago, you got a sentence, you came back in six months. And Sanchez-Morales said, the reason I came back here is because I had no option. For me, it was not optional, because my son's mother is sick. His common-law wife, also not a US citizen, had several very serious medical conditions. There was some discussion of those. And then Sanchez-Hernandez said, and truly, I don't regret this. In a sense, I don't regret it, because I came back to help my family. I did it from the heart. I felt that I had no option. To me, it was not optional. Judge Crane responded immediately, you should have stayed in Mexico. You should have provided moral support for your spouse and your minor child from there. And you should have sent them whatever monetary assistance you could. Because now, you're going back to BOP, and you can't do anything for them there. And then he said, the last time you were here, less than four years ago, I gave you 41 months. Not only is 41 not sufficient, that entire criminal history category 4 is not sufficient. And therefore, we're going to start the computation at 46 months under criminal history category 5. So I would respectfully submit that that removes it from both. That carries our burden on prong 3, and as to prong 4, it's essentially the same argument. There is, in essence, no error to correct. Judge Crane imposed an upward departure. He offered four independent, cogent explanations for that. Both Molina-Martinez and Rosales-Morales are peppered with the phrase, in the ordinary case. As I said, both of those two cases, on prong 3 and prong 4, are essentially the same set of facts. The defendant was subject to a 70- to 87-month advisory range. The two district judges, Andrew Hainan and Sam Sparks, erroneously thought the range was 77 to 96. In Molina-Martinez, the prong 3 case, the sentence imposed was 77 months, which was above the bottom of the correct guideline range, but at the bottom of the incorrect guideline range, giving rise to the assumption that perhaps there was a reasonable probability the defendant could show, had he been sentenced under the correct guideline range, he would have gotten something less than 77. Let me ask you, do the government people have any feel for what is the success rate of resentencing that this court orders? In other words, success rate for the defendant? Your Honor, off the top of my head, I cannot answer that question. I'm moderately confident that the Administrative Office for U.S. Courts does keep those statistics, as well as the Sentencing Commission. Right. That's one way to look at it. Gosh. Making us plow through all that stuff. Thanks a lot. I apologize, Your Honor. Sorry I asked. That's okay. I apologize in part for the answer. Rosales-Morales is essentially the same case. The sentence imposed was 78 months. And again, the presumption is, had the court used the correct guidelines range, the imposition of a sentence of 78 months, 8 months above the bottom of the correct guideline range, does impugn the fairness and integrity of judicial proceedings generally, to the extent that, at least according to the Supreme Court, it can be corrected expeditiously in a resentencing proceeding. I don't think we have any further questions. Thank you. To start with Prong 3, I would submit the record does not show that Judge Crane selected Category 5 independent of Mr. Sanchez's actual criminal history score, as opposed to deciding that a one-category upward departure was warranted because of the prior legal reentry sentence from whatever the initial category was calculated. And here, Judge Crane simply never considered the correct range or the correct criminal history category. I think a helpful case on this point is Urbina-Fuentes, which is cited in the briefs, where the judge calculated the sentencing range, said, I considered one range below this and one range above this, and I have determined that the sentence I am imposing is the sentence I would give regardless of the guidelines range. This court found a plain error on appeal that, in fact, decreased the range to a lower range than anything the district court had considered and found no third prong problem in reversing on plain error. Is that a published opinion? I do not recall. Because that sounds to me like a case where we would have upheld the sentence on the basis that the judge had, you know, is not a non-guideline sentence. Well, that is not what happened. I believe in that case the government actually conceded the third prong. It is a published opinion, and it is cited in the briefs. And here, the court decided to impose a guidelines-based departure, which is, in fact, a guideline sentence. And when the court chooses to be guided by a guidelines range that is later shown to be incorrect, then there is a reasonable probability of prejudice. The fact that the court would impose an upward departure from the correct range is not enough to show that there is no possibility of prejudice, because if the court began the departure from the correct lower point, the departure itself might be lower. I do want to address what the court has brought up now a couple of times about the waiver issue and whether this was an intelligent waiver. Of course, I apologize I have not reviewed some of those cases in preparation for this argument since it was not briefed and wasn't brought up by the government. But to my knowledge, no circuit has said that simply agreeing that the PSR is correct or not having any objection to the PSR is a knowing and intelligent waiver of any legal objections that the defendant might have. And I would also point the court again to Rosales-Morales, where the Supreme Court acknowledged that errors in the PSR do, in fact, originate with the probation officer as an arm of the court. And what degree do the probation officers have? They have college degrees, right? And that is the most naive statement in the world, but far be it from me to criticize the Supreme Court. It comes from the Supreme Court. And while the error originates in the PSR with the probation officer, of course we are obligated to raise any objections that we see. But simply missing a legal objection that we could have raised and did not raise... I don't see how... I mean, really, you make a very good argument. You have very good points here. Unfortunately, it's a difficult case, but I have to say I cannot believe that the public defender down in Brownsville, I think that's where Judge Crane is, didn't... his antennae didn't go up as soon as he saw sexual indecent conduct with a minor, because you know we've had dozens and dozens of cases about that. It's McGowan, and it is, in fact, an area where a lot of law has changed. The 4B1.2 guideline definition is new. In favor of the defendant. Every step of it has been in favor of the defendant. So for them not to look at anything like this down in the trial court level is pretty bad. All I can say is that it was a mistake, and I certainly wish that we did not make mistakes, but sometimes we do, and that's why we get here on plain error review. But I do want to emphasize, I don't believe any circuit has said that simply not having an objection to the PSR when there's no indication that defense counsel was aware of an objection that they were foregoing constitutes a waiver as opposed to a forfeiture that leads to plain error review. And I would urge the court, if the court... that would be a sea change in the law. If the court does want to address that issue, I would ask for the opportunity to submit supplemental briefing on the issue, because that is just... that is not the law. I don't believe that's the law in any circuit. I would urge the court not to adopt that approach. Just briefly on the fourth prong, Chavez-Hernandez I think is simply not relevant. First of all, I'm not sure the considerations in Chavez-Hernandez would survive Rosales-Morales and its rejection of recidivism or the reasonableness of the sentence as appropriate fourth prong considerations. But even so, here, the age of the victim is not the only reason why these offenses don't qualify as crimes of violence. Even if the categorical approach did not apply and we applied a fact-based approach, they would still not qualify, because 2241C requires either an element... or it requires a victim to be under 12, which was not the case here, or requires an element of force, threats, or incapacitation, which is not in these offenses as the law defines those crimes. So for that reason, I think we are in the range of ordinary cases described by Rosales-Morales. I would ask the court to vacate and remand for resentencing.